IN THE UNITED STATES BANKRUPTCY COURT
FOR NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JAMES S. THORSTEN and<br>SELDEN A. THORSTEN,<br><br>Debtors,<br><br>v.<br><br>WELLS FARGO BANK N. A.<br>dba<br>AMERICA'S SERVICING COMPANY<br>NORWEST HOME IMPROVEMENT<br><br>Defendants. | Chapter 7<br><br>Case No. 06-65496-MHM<br><br>Judge: Margaret Murphy<br><br>--------------------------------<br>ADVERSARY<br><br>FILE NO. _____<br>**08-9035** |

## DEBTORS BRIEF IN SUPPORT OF MOTION TO REOPEN CASE FOR THE PURPOSE OF A HEARING TO IMPOSE SANCTIONS FOR CONTEMPT FOR VIOLATIONS OF DISCHARGE INJUNCTION & MOTION FOR SANCTIONS

### STATEMENT OF OPERATIVE FACTS

Debtors herein currently own a home, located at 4436 Shelborne Drive, Dunwoody, Georgia 30038, which has a first mortgage through Countrywide Home Loans, Inc. and a Second Mortgage through Wells Fargo thereon. Debtors residence is currently being advertised by Wells Fargo for foreclosure sale on Tuesday August 5, 2008, and Debtors will suffer irreparable harm, injury and damages if this bankruptcy court does not issue a Stay staying the foreclosure as advertised until this matter is heard on an emergency expedited basis and a decision made therein on the merits,

1

which Stay of Foreclosure, as provided in Rule 7062 and/or 7065 of the Bankruptcy Code, is hereby requested by Debtors herein.

In early 2004, Debtors desperately needed funds for medical and other necessary expenses and in furtherance thereof consulted with Defendant Wells Fargo in order to obtain a second mortgage for the term of thirty years with a fixed rate of interest. Wells Fargo approved Debtors for a second mortgage with a thirty-year term and a fixed rate of 7% in the total amount of $114,500.00. On February 26th, 2004, at the closing table, Debtor, James Thorsten, was presented with a Line of Credit with variable interest that was completely different from what had been promised to Plaintiffs, and was told by Wells Fargo's representative that this is the only option that was being offered. Debtor, James Thorsten, did not have any alternative but to sign on this proposed Line of Credit securing it with a deed to secure debt to Plaintiffs' residence, At that time, Debtor, James Thorsten, was not afforded the option to rescind the Line of Credit second mortgage as provided by law.

On or about May 14th, 2006 debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code. A list of creditors and all schedules were filed with the petition, and Wells Fargo was included on the list of the secured creditors. During the pendency of such Bankruptcy proceeding, Wells Fargo did not file any documents, nor did Wells Fargo appear at any

2

time during the bankruptcy proceedings, including the meeting of the creditors.

Wells Fargo's Line of Credit second mortgage on the debtors' residence is and has been since its inception on February 26th, 2004, in the principal amount of $114,500.00.

Countrywide Home Loans, Inc. first mortgage in the amount of $155,000.00 was reaffirmed with a reaffirmation Agreement approved by the bankruptcy court.

On August 28th, 2006 an Order was entered by Honorable Judge Margaret Murphy discharging Debtors' debts including Wells Fargo's secured debt, and a report of no distribution was filed by the Trustee. The estate was closed and the Trustee discharged on or about October 20th, 2006. During and after the bankruptcy proceeding, Wells Fargo conducted a series of illegal collection activities and threats of foreclosure against Debtors' residence in violation of the Automatic Stay and the Injunction Discharge.

On June 22, 2006, during the pendency of the bankruptcy proceeding, Wells Fargo sent Debtors a threatening letter, issued by Sharon Bryant, Collection Officer of Wells Fargo, to Susan Wheat Lehner, Plaintiffs' former attorney, demanding May and June payments in the amount of $2,109.68. Wells Fargo Bank submitted a reaffirmation agreement that was

not in Debtors' best interest under §524(c)(6), because the interest was never reduced or modified in anyway and the original loan amount increased substantially, although Debtors paid in excess of $20,000.00 but the loan amount never decreased, but rather, the loan amount increased tremendously during this period.

Although Debtors had requested and had completed and executed a reaffirmation agreement proposed by Wells Fargo which increased debtors' debt by approximately $2,750.00 not including the thousands of dollars that debtors already paid to Wells Fargo during and after the bankruptcy proceedings with and increase of interest rate from 7.275% to 11.03%. Such Reaffirmation Agreement with Wells Fargo, however, was never filed with the bankruptcy court.

On or about March 26th, 2007, Debtors by and through their then counsel, Grace Tillman, filed a Motion to Reopen their Chapter 7 case in order to reaffirm Wells Fargo secured loan, using their proposed reaffirmation.

On May 15th 2007, the date of the hearing for Motion to Reopen their Chapter 7 case in order to reaffirm Wells Fargo's secured loan, Wells Fargo's counsel did not show to such hearing even though an appropriate

notice was given to Wells Fargo. At that time, the Honorable Judge Murphy denied Plaintiffs' Motion to Reopen the Bankruptcy Proceeding.

After Debtors were discharged, Wells Fargo's stubbornly refused to negotiate a settlement with the Debtors unless the debt was reaffirmed using their proposed reaffirmation agreement and filing same in the bankruptcy proceeding.

Due to Wells Fargo's illegal conduct shown above, Debtors suffered an extreme amount of debilitating emotional distress, grief, harassment and embarrassment for which it seeks herein to recover from Wells Fargo.

On the following dates, October 25th, 2006, December 28th, 2006, January 4th, 2007, January 12th, 2007, January 18th, 2007, February 19th, 2007, April 17th, 2007 and April 30th, 2007, Wells Fargo sent letters threatening Debtors with foreclosure, regarding Debtors' discharged debt, loan No.: 65065024430230001. The October 25th, 2006 letter demanded the sum of $6,806.48, which figure includes late charges and other charges which were not specified and/or explained. The December 28th, 2006 letter demanded payment of the debt in the amount of $123,547.53 On January 4th, 2007 letter demanded payment in the amount of $126,876.11. The January 12th, 2007, demanded payment in the amount of $126,876.11, which

5

included illegal interest in excess of $10,000.00. The January 18th, 2007letter demanded $11,282.59 in order to reinstate Debtors' discharged secured loan.

On each of the eight letters referred to the preceding paragraph, it was stated that "THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE".

On April 11th, 2007, Grace Tillman, Debtors' former attorney, sent a letter to Debtors informing them that Wells Fargo's payoff amount on Debtors' discharged loan was in the amount of $131,583.96 which included May's alleged payment of $15,809.66 and demanded that Debtors' discharged debt be reinstated with interest rated of 11.25% and Plaintiffs were to make monthly payments in the amount of $1,084.64.

In the letters of April 17th and April 30th, 2007, Wells Fargo, by and through its counsel of record, McCalla Raymer, LLC. sent a foreclosure notice to Debtors. The April 30th, 2007 letter, demanded payment in the amount $129,269.72.

On June 4th, 2007, Debtors were facing another foreclosure dilemma created by Wells Fargo in which they were forced to pay $16,884.30 to the McCalla Raymer LLC law firm, in order to save their residence from foreclosure and at that time Debtor, James Thorsten, was forced to sign an illegal Reinstatement Agreement.

6

Wells Fargo continues to refuse to negotiate any agreement with Debtors, while at the same time, extorting money from Debtors subjecting them to suffer severe and debilitating emotional distress, and undergo agonizing threatening, harassing and coercive treatment by McCalla Raymer LLC. At the same time, Wells Fargo continues to refuse to provide Plaintiffs with an often requested accounting statement of the money that been extorted from Plaintiffs and paid by them.

On November 16th, 2007, Wells Fargo sent another illegal letter to Debtors regarding Debtors' discharged debt, Loan No.: 6506502443023 0001, threatening Debtors with foreclosure and demanding $5,578.61, which figure was stated to include late charges and other charges, that were not explained and/or itemized. On June 11th, 2008, Wells Fargo sent another letter to Debtors regarding their discharged debt, Loan No.: 65065024430230001, stating "Despite our repeated attempts to work with you, your above-referenced account still remains severely delinquent. Accordingly, you are hereby notified that, due to the default under the terms of your mortgage or deed of trust, the entire outstanding balance on your account is now due and payable. In addition, we are in the process of referring your account to our foreclosure company with instructions to begin foreclosure proceedings". It also stated: "In the event you: (1) are

7

experiencing an inability to pay due to circumstances beyond your control, (2) wish to explore an opportunity to <u>reinstate your mortgage</u> or deed of trust, need assistance in selling your property, please contact us...".

At that time at Wells Fargo's request, Debtors made several payments to Wells Fargo after the Discharge Order was entered and each and every letter of receipt of Debtors' payment sent by Wells Fargo to them shows Wells Fargo emblem and referenced their discharged Loan No.: 65065024430230001, stating "Thank you for contacting Wells Fargo's telephone service to make an electronic payment on your <u>Line of Credit</u>

Since the Bankruptcy Ch. 7 was closed and continuing thereafter to the date of this filing, Wells Fargo has never stopped harassing and/or threatening the Debtors, nor did Wells Fargo agree to debtors' demand and request to inform them of the amount due and paid on the second mortgage Line of Credit or to negotiate, reduce and/or cooperate with debtors to resolve the issues as required by the bankruptcy code . Instead, Wells Fargo continues to threaten debtors with foreclosure and has in furtherance thereof extorted more than $20,000.00 and continues to attempt to extort from the debtors in asserting personal liability against the Debtors because Wells Fargo can and is able to do so, and the debt amount was never reduced.

Wells Fargo Bank also attempted to have Debtors execute an improper reaffirmation agreement, therefore, Wells Fargo is in Contempt for Coercive Reaffirmation Violations.

Wells Fargo will never cease harassing and coercing the debtors based on the continuing series of illegal actions performed by Wells Fargo against the debtors to date.

The letters from Wells Fargo d/b/a America's Servicing Company and Norwest Home Improvement or its law firm McCalla Raymen, LLC are attached as Exhibits 1-21 to Debtor, James S. Thorsten. (Affidavit of Debtor James S. Thorsten, Exhibit (A) to the Motion).

## ARGUMENT AND CITATION OF AUTHORITY

It is clear from its conduct in this matter and other similar cases that Wells Fargo never wanted or intended to appear or file any documents during the pendency of the bankruptcy proceeding. Nor did Wells Fargo plan to ever appear at any time during the bankruptcy proceedings, including the meeting of the creditors.

Wells Fargo was not willing to acknowledge the Bankruptcy process for two reasons: 1. Wells Fargo believes it can do anything it wants without appearing in the bankruptcy proceeding. 2. Wells Fargo believes it would lose money and profit by involving itself in the bankruptcy proceeding. 3.

9

Wells Fargo also believes it can extort as much as it wants from Debtors, as long as they can scare Debtors with the threat of foreclosure because they have the security deed on their residence and believes it can foreclose anytime it wants using its law firm, McCalla Raymer, LLC. a law firm known to be willing to constantly threaten and harass debtors.

As shown in the Motions and Affidavit, Wells Fargo is guilty of violating this Bankruptcy Court's Discharge Injunction. The alleged post-discharge agreement was invalid, unenforceable and was never approved by this Court.

1) **GROUNDS FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**CIVIL CONTEMPT FOR VIOLATIONS OF THE DISCHARGE INJUNCTION UNDER 11 U. S. C.§ 105 (a)**

Bankruptcy courts have regularly exercised their powers of contempt under 11 U. S. C.§ 105 in order to remedy violations of discharge inunctions. See: In Re Close, 2003 WL 2297825 at *10; In Re Gervin, 337 B.R. 854, 858 (Bankr. D. Or. 2005).

A court may impose civil contempt sanctions where there is clear and convincing evidence that (1) a valid order of the court existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the

10

order. See Robin v. Woods, 28 F.3d 396, 399 (3d Cir. 1994); In re Close, 2003 WL 22697825 at * 10.

As to the first requirement, "[a] valid order is one whose terms are specific and definite." In re Close, 2003 WL 22697825 at * 10 (citation omitted). The discharge order encompasses a statutory injunction that prohibits any attempt to collect a debt that has been discharged. See 11 U.S.C.§ 524(a)(3). This general prohibition obviously includes telephone calls and letters to collect a discharged debt. The face of the discharge order itself states: The debtor is granted a discharge under section 727 of Title 11, U.S. Code, (the Bankruptcy Code).

In the instant case, there is no dispute that there was a valid Discharge Order was entered on August 28, 2006 and that Wells Fargo knew about the entry of such discharge order. The Affidavit of Debtor/Plaintiff James C. Thorsten and the documents and letters attached thereto show clearly that Wells Fargo disobeyed the terms of the discharge order in asserting personal liability against Debtor/Plaintiffs.

**Collection of Discharged Debts Prohibited**

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach

wages or other property, or to take any other action to collect a discharged debt from the debtor.

The Affidavit of James S. Thorsten is replete with facts showing that Wells Fargo attempted to, and did collect, as personal liability on the discharged debt

In the Affidavit of Debtor James S. Thorsten and the Motions, Debtor/Plaintiffs has set out facts legally justifying their request for the issuance of a temporary restraining order and/or preliminary injunction staying the foreclosure sale currently scheduled for as August 5, 2008 requested therein necessary to temporarily protect Plaintiffs' interest in the property.

The facts presented herein justify the issuance of an order for Stay order enjoining Defendant from foreclosing, selling, transferring title or otherwise interfering with Plaintiffs' interest in the property until trial of the issues presented in Debtor/Plaintiffs' adversary Complaint, or until further order of this Court.

DAMAGES

A bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by §524 and other damages for Debtors if the

merits so require. Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d. 265, 267, n.4 (1st Cir. 19990).

Here, Debtor/Plaintiffs have suffered damages in the form of unaccounted for payments extorted as personal liability on a discharged debt in excess of $20,000. They have been personally embarrassed, harassed, and humiliated by many persons calling them, taking pictures of their residence as a part of the illegal foreclosures.

## DEBTOR/PLAINTIFFS ENTITLED TO DAMAGES FOR CIVIL CONTEMPT

Sanctions for civil contempt serve two purposes: (1) to coerce the disobedient party into compliance with the court's order; and (2) to compensate for losses sustained by the disobedience. In Re Woods, 28 F.3d at 400. The court has broad discretion in selecting appropriate sanctions. In re Chambers, 324 B.R. 326 (N.D. Ohio 2005) (citing In re Tubbs, 302 B.R. 290, 291 (Bankr. W. D. Ark. 2003)). Upon a finding of civil contempt, a bankruptcy court has the power to issue sanctions such as costs, compensatory damages and attorneys' fees. See McDonald's Corp. v. Victory Investments, 727 F.2d 82 (3d Cir. 1984); In re Foltz, 324 B.R. 250, 253 (Bankr. M.D. Pa. 2005); In re Ray, 262 B.R. 580, 585 (Bankr. D. Me. 2001).

Emotional Distress

Bankruptcy courts have allowed an award of emotional damages for violation of the discharge injunction. See e.g. In re Feldmeier, 335 B.R. at 814; In re Barry, 330 B.R. 28, 37-38; In re Gervin, 337 B.R. at 862-64; In re Perviz, 302 B.R. 357, 371 (Bankr. N.D. Ohio 2003); In re Poole, 242 B.R. 104, 112 (Bankr. N. D. Ga. 1999). In Re Meyers, U.S.B.C. (E. Dist. Penn.)

Debtor/Plaintiffs emotional distress is severe and Debtor/James Thorsten is undergoing therapy by a psychologist and a psychiatrist, and Debtor/Plaintiff Selden A. Thorsten, is under heavy pain medication for a serious and debilitating back injury with migraine headaches that are greatly exacerbated by the emotional distress unnecessarily and wrongfully caused by Wells Fargo actions.

2) **DEBTOR/PLAINTIFFS' WILL SUFFER IMMEDIATE AND IRREPARABLE HARM:**

If Debtors are not afforded the relief herein requested, Wells Fargo will unjustifiably be allowed to take unfair and inequitable advantage of Debtors herein, after intentionally, or arbitrarily and capriciously violating their rights, as shown in the Motion.

If Wells Fargo is not required by this Court to, within a reasonable period of time as may be determined by the Court, be required to respond to hearing date as requested herein.

If Debtors are not granted the requested Stay order by this Court, Debtors will suffer continuing injuries and damages due to the wrongful actions of Wells Fargo. Wells Fargo should not, in these circumstances, be allowed to foreclose, sell, or otherwise interfere with Debtors' interest in the property, and thereby wrongly deprive them of their opportunity to have the matter heard and determined as they have requested in the Motion and an appropriate order protecting Debtors' rights in the matter under these circumstances.

3) **DEBTORS HAVE NO ADEQUATE REMEDY AT LAW:**

If Plaintiff/Debtors' charges are true as alleged and sworn to and Wells Fargo's wrongful actions in asserting personal liability for a discharged debt during and after the discharge and its unilateral action to foreclose sell, transfer title to the property, or otherwise interfere with Debtors' interest in the property, and there is no adequate remedy at law, and no reasonable way to determine the extent of Debtors' damages, if Debtors prevails in this matter on the hearing or trial on the merits.

4) **CONCLUSION:**

For the reasons set out in Debtor/Plaintiffs' Motion, Affidavit and Brief filed contemporaneously herewith, Debtor/Plaintiffs show that they have shown they are entitled to the relief requested herein.

WHEREFORE, Debtor/Plaintiffs requests:

(a) that the Court grant their request for a hearing to reopen the bankruptcy proceeding;

(b) that the Court grant their Motion for a temporary restraining order and/or a preliminary injunction stay or enjoining Wells Fargo of the Foreclosure Sale currently being advertised in the Dekalb Champion newspaper and currently set for August 5, 2008 until a hearing on the merits of Debtor/Plaintiffs' Motions;

(c) that the Court grant such other and further relief as Debtors are entitled to until the matter can be heard and determined by the Court and/or Jury.

Respectfully submitted this 21st day of July, 2008.

W. Dent Acree
Attorney for Debtor/Plaintiffs
GA Bar No: 001600

Six North Parkway Square
4200 Northside Parkway, N.W.
Atlanta, Georgia 30327
Tel (404) 869-3400
fax (404) 869-3444
wdacree@aol.com